IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| J.B. INTERNATIONAL, LLC d/b/a<br>J. BIRNBACH,<br><br>   Plaintiff,<br><br>v.<br><br>WILLIAM NOBLE RARE JEWELS, L.P.,<br>and WILLIAM NOBLE,<br><br>   Defendants. | Civil Action No. 3:22-CV-1422-K |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff J.B. International, LLC's ("J.B. International") Motion for Summary Judgment (the "Summary Judgment Motion") and Brief and Declaration in support thereof, Doc. Nos. 36–37, and Defendants William Noble Rare Jewels ("William Noble Rare Jewels") and William Noble's Response to Plaintiff's Motion for Summary Judgment and Brief and Appendix in support thereof. Doc. Nos. 40–42.

Upon consideration of the Parties' submissions, the Court **GRANTS** J.B. International's Summary Judgment Motion in part and **DENIES** it in part. J.B. International contends that William Noble and William Noble Rare Jewels sold diamonds and jewelry for J.B. International on consignment but failed to pay J.B. International in full for the merchandise. In its pending motion, J.B. International seeks summary judgment on its claims for breach of a forbearance agreement and a January 2020

1

consignment agreement between J.B. International and one or both Defendants. William Noble Rare Jewels accepts liability, so the Court grants J.B. International's Summary Judgment Motion against William Noble Rare Jewels. William Noble produces evidence that he is not bound by the forbearance agreement or the consignment agreement, so the Court denies the rest of J.B. International's Summary Judgment Motion.

## I. BACKGROUND

### A. Facts

In 1983, William Noble founded a jewelry store that shares his name: William Noble Rare Jewels. Doc. No. 42 at 3. His customers and vendors took to calling his business "William Noble." *Id.* While the store uses his full name, Mr. Noble prefers a different one. *Id.* He goes by "Bill." *Id.*

In April 2019, J.B. International consigned diamonds and diamond jewelry for sale through William Noble Rare Jewels' Highland Park Village location. *Id.* at 4; Doc. No. 37-1 at 1. A "memorandum" memorializing the consignment explained that J.B. International retained ownership of the merchandise, had the right to demand its return before sale, and could veto proposed sales. Doc. No. 37-2 at 1. "William Noble" of Highland Park Village is the consignee listed in the memorandum. *Id.* Nobody signed the document. *Id.*

Neither J.B. International, nor Mr. Noble, nor his eponymous business appears to have been troubled by the ambiguous and unsigned record of the business relationship among some or all of them. In the same month, J.B. International consigned two

2

more batches of diamonds and diamond jewelry to "William Noble" in materially identical memoranda. *Id.* at 2–3. Three more batches and three more materially identical memoranda followed in June 2019. *Id.* at 5–8. J.B. International subsequently approved the sale of some of the consigned merchandise. Doc. No 37-1 at 2; Doc. No. 37-3 at 2.

Following approval of the sales, part of J.B. International's share of the proceeds went unpaid by whomever had agreed to pay it. Doc. No. 37-1 at 2. By August 2019, J.B. International proposed a forbearance agreement by which William Noble Rare Jewels would pay a "Settlement Amount" of nearly one million dollars in installments to cover the "amount due to J.B. International." *Id.* at 2; Doc. No. 37-4 at 1. Aside from these provisions and an acceleration provision, the two-page agreement is otherwise devoid of the typical features of a forbearance or settlement agreement. Doc. No. 37-4. No party to the agreement acknowledges a debt to J.B. International or a default in performing its contractual obligations, J.B. International does not agree to refrain from suing any other party, and no party releases any other party from liability. *Id.* "William Noble" signed the agreement. *Id.* at 3.

J.B. International stopped receiving full required payments under the forbearance agreement in November 2019. Doc. No. 37-1 at 3. Undeterred, J.B. International consigned nearly two hundred thousand dollars in additional merchandise to "William Noble" of Highland Park Village in January 2020. Doc. No. 37-5. The memorandum recording the consignment is materially identical to its predecessors except for the

3

inclusion of a single line reading, "as agreed, paid immediately if sold. Personally guaranteed by Bill Noble." *Id.* Shortly before the memorandum issued, Mr. Noble also wrote an email to J.B. International stating, "I personally guarantee anything we buy. Bill." Doc. No. 37-7 at 1. As before, nobody signed the memorandum. Doc. No. 37-5.

J.B. International again approved the sale of consigned merchandise and again failed to receive payment in full. Doc. No. 37-1 at 3. J.B. International demanded the return of the remaining merchandise but has not received any of it. *Id.* at 4.

### B. Procedural History

J.B. International sued William Noble and William Noble Rare Jewels in June 2022. Doc. No. 1. In its operative pleading, J.B. International asserts that both Defendants are liable for breach of the forbearance agreement, breach of the January 2020 memorandum, failure to pay J.B. International its share of proceeds from approved sales of consigned merchandise, and breach of fiduciary duty. Doc. No. 16 ¶¶ 24–340.

J.B. International moved for summary judgment on its claims for breach of the forbearance agreement and the January 2020 memorandum. Doc. Nos. 36–37. William Noble Rare Jewels accepts liability. Doc. No. 41 at 6 n.28. William Noble does not. Doc. Nos. 40–41.

## II.   LEGAL STANDARD

The Court grants summary judgment on a claim or defense if the parties do not genuinely dispute any fact material to the claim or defense and the party requesting

summary judgment is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a jury could find for the party opposing summary judgment on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In reviewing the evidence, the Court draws all justifiable inferences in favor of the party opposing summary judgment but will not deny summary judgment based on "speculation, improbable inferences, or unsubstantiated assertions." *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012). The Court considers testimony properly entered in the summary judgment record without weighing its credibility. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021).

The Parties assume that the substantive law of Texas applies to J.B. International's claims, and the Court joins in their assumption. *Reynolds v. American-Amicable Life Ins. Co.*, 591 F.2d 343, 344 (5th Cir. 1979) (per curiam); *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009).

### III.   DISCUSSION

J.B. International requests summary judgment against William Noble Rare Jewels and William Noble for breach of J.B. International's forbearance agreement with one or both Defendants and for breach of the January 2020 memorandum recording the consignment of goods to "William Noble." Doc. No. 36. The Court grants summary judgment against William Noble Rare Jewels on both claims because William Noble Rare Jewels accepts liability. Doc. No. 41 at 6 n.2. The Court denies J.B. International summary judgment against William Noble on the same claims. J.B.

5

International has not established that Mr. Noble is a party to the forbearance agreement or the January 2020 memorandum.

The Court reviews each claim against Mr. Noble in turn. The Court then considers and denies summary judgment on J.B. International's arguably unpled claim that Mr. Noble breached a guarantee of William Noble Rare Jewels' performance under the January 2020 memorandum.

### A. Forbearance Agreement

The Court denies summary judgment on J.B. International's claim for breach of the forbearance agreement because Mr. Noble is not a party to the agreement. The agreement expressly states that "William Noble Rare Jewels, L.P. . . . agrees to pay the amount due to J.B. International." Doc. No. 37-4. Every numbered paragraph of the agreement sets forth an express obligation of William Noble Rare Jewels. *Id.* Mr. Noble has no express rights or obligations under the agreement. *Id.* While Mr. Noble signed the agreement without indicating whether he was acting as William Noble Rare Jewels' representative, the Court must enforce the language in the body of a contract clearly indicating that the contract is the store's alone. *Robertson v. Bland*, 517 S.W.2d 676, 678 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ dism'd) (individual's signature as "Contractor" did not make him personally liable where contract contemplated that entity would serve as contractor).

6

### B. January 2020 Memorandum

The Court also denies summary judgment on J.B. International's claim for breach of the January 2020 memorandum memorializing the consignment of merchandise to "William Noble" because it is unclear whether Mr. Noble is a party to the memorandum.

To decide whether the consignee "William Noble" is William Noble, the man who calls himself "Bill," or William Noble Rare Jewels, the entity that others call "William Noble," the Court applies a two-step analysis. Assuming with the Parties that the memorandum sets forth a valid contract, the Court first asks whether the text of the memorandum unambiguously identifies the parties to the contract. If it does, the text controls. *See Smith v. Montgomery*, 3 Tex. 199, 208 (1848) (an agreement with the partners "Smith & Pilgrim" is not an agreement with Smith). If the text is ambiguous, the Court looks to evidence outside the contract to identify the parties. *Jordan v. Rule*, 520 S.W.2d 463, 465 (Tex. Civ. App.—Houston [14th Dist.] 1975, no writ).

The January 2020 memorandum is ambiguous. It designates the consignee as "William Noble," a name used by Mr. Noble as well as William Noble Rare Jewels. Doc. No. 37-5; Doc. No. 42 at 3. The Court cannot determine which person "William Noble" describes without reviewing evidence outside the memorandum. *See Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 753 (Tex. App.—Dallas 1997, writ denied) (a contract is ambiguous if it depends on an appraisal but does not specify which of two appraisals to use or requires delivery to the green house on Pecan Street

7

but does not specify which of two green houses on Pecan Street is the correct destination); *Raffles v. Wichelhaus*, 159 Eng. Rep. 375 (K.B. 1864) (contract was ambiguous where it referred to goods on ship named Peerless but did not specify which of two ships named Peerless carried the goods). The memorandum itself sets forth obligations to market or return merchandise that either "William Noble" could discharge, and no signature clarifies the relationships among the Parties. Doc. No. 37-5. The limited textual evidence of the Parties' relationships cuts against J.B. International. *Id.* The memorandum states that the consignee shares William Noble Rare Jewels' storefront address. *Id.* It also states that "Bill Noble" personally guarantees prompt payments to J.B. International after the consignee sells merchandise. *Id.* There is no obvious reason for "Bill Noble" to personally guarantee payments if he is already liable for them as "William Noble." *See Flavor Finish Resurfacing, L.L.C. v. Ellerkamp*, 2012 WL 3776345, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.).

Considering the textual evidence together with the extrinsic evidence submitted by the Parties, a jury could find that Mr. Noble is not the "William Noble" named in the January 2020 memorandum. J.B. International's forbearance agreement with "William Noble Rare Jewels, L.P." demonstrates its awareness that the store exists separately from Mr. Noble. Doc. No. 37-4. Mr. Noble asserts that he has always dealt with J.B. International as a representative of William Noble Rare Jewels. Doc. No. 42 at 4. He also says that J.B. International sent the January 2020 memorandum to William Noble Rare Jewels. *Id.* Consistent with the language of the memorandum, Mr. Noble states

that customers and vendors often refer to him as "Bill Noble" and to his store as "William Noble." *Id.* at 3; Doc. No. 37-5.  One reasonable inference from the evidence is that J.B. International intended to consign merchandise to William Noble Rare Jewels and used the store's colloquial name and its address in the consignment documentation.  The Court sees nothing warranting a departure from the usual rule precluding summary judgment to enforce a competing interpretation of an ambiguous agreement. *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 994 (5th Cir. 2019); *see also Amigo Broad., LP v. Spanish Broad. Sys.*, 521 F.3d 472, 487–88 (5th Cir. 2008) (evidence that contract restricting employees' use of their "names" may have referred to their "radio names" rather than their legal names could support finding that use of radio names breached the contract).

### C. Guarantees

Insofar as J.B. International contends that Mr. Noble is liable under the January 2020 memorandum by personal guarantee, the Court denies J.B. International summary judgment.

The Parties disagree about whether Mr. Noble issued a guarantee.  That comes as a surprise because neither Party alleged anything about guarantees in their pleadings. J.B. International neither pled that a guarantee existed, nor that Mr. Noble breached it.  Doc. No. 16.  Mr. Noble understandably did not plead in defense that the statute of frauds bars J.B. International's guarantee claim, though he now argues that it does so in part.  Doc. No. 22; Doc. No. 41 at 8–9.

9

The Court will assume without deciding that J.B. International's breach of guarantee claim is encompassed in its breach of contract claim because one line of the January 2020 memorandum discusses the guarantee. Doc. No. 37-5. On that assumption, the Court finds Mr. Noble's belated statute of frauds defense fairly presented in response to J.B. International's expansive interpretation of its pleading. J.B. International does not object to consideration of the defense. *See Thorson v. Aviall Servs., Inc.*, 2018 WL 1426971, at *10 (N.D. Tex. Mar. 22, 2018) (Fitzwater, J.) (considering statute of frauds defense first raised at summary judgment where plaintiff failed to identify prejudice that would result from doing so).

Although J.B. International offers two documents purportedly memorializing Mr. Noble's guarantee, neither unambiguously describes an enforceable guarantee. The earlier document is Mr. Noble's email that reads, "I personally guarantee anything we buy. Bill." Doc. No. 37-7 at 1. The later document is the unsigned January 2020 consignment memorandum that concludes with the fragment, "as agreed, paid immediately if sold. Personally guaranteed by Bill Noble." Doc. No. 37-5. The Court considers the distinct language of each document in turn.

1. *Alleged Guarantee in Mr. Noble's Email*

The first document, Mr. Noble's email, does not clearly set forth a guarantee of payment for consignments. While J.B. International's owner understood Mr. Noble to personally guarantee "everything consigned after January 3, 2020 and all amounts that were due and owing under the [forbearance] Agreement," the email says something

10

different. Doc. No. 37-1 at 3. In the email, Mr. Noble, presumably referring to William Noble Rare Jewels, guarantees "anything we buy." Doc. No. 37-7 at 1.

As Mr. Noble notes, there is a difference between buying merchandise and acquiring it on consignment. Doc. No. 42 at 3. A party buys merchandise when he or she acquires title to it for a price. Tex. Bus. & Com. Code § 2.106(a). A party acquires merchandise on consignment when he or she takes custody of another's merchandise for sale to others or subsequent return to the supplier. *Charles M. Stieff, Inc. v. City of San Antonio*, 130 Tex. 594, 600–03 (1938). While a different meaning of the term consignment prevails in determining the rights of a third party in merchandise delivered to a seller, *Fuller v. Texas W. Fin. Corp.*, 644 S.W.2d 442, 443 (Tex. 1982); Tex. Bus. & Com. Code § 9.102, in determining the rights of the parties to the initial delivery agreement, the term "carries [the] decided implication that the property consigned is not the property of the consignee, the title remaining in the consignor." *Consignment*, Bouvier Law Dictionary (2012 update); *Emps. Cas. Co. v. Peterson*, 609 S.W.2d 579, 587 (Tex. Civ. App.—Dallas 1980, no writ.) (delivery of diamonds for sale at estimated price a consignment); 65 Tex. Jur. Sales § 119.

When Mr. Noble guaranteed "anything we buy," he might reasonably have meant that he guaranteed transactions in which William Noble Rare Jewels takes title to merchandise for a price. According to Mr. Noble, William Noble Rare Jewels acquires some of the merchandise he resells by this method, which he calls "buy-for-stock." Doc. No. 42 at 3. Since the Parties accept that William Noble Rare Jewels

11

received merchandise from J.B. International on consignment, a "buy-for-stock" guarantee would not provide J.B. International a basis for recovering the value of the merchandise from Mr. Noble. Doc. No. 37 at 2–4; Doc. No. 41 at 3–5.

Although it is reasonable to read Mr. Noble's email to grant a "buy-for-stock" guarantee, the Court agrees with J.B. International that Mr. Noble might have intended to guarantee more than "buy-for-stock" transactions when he used the term "buy." There is no evidence that William Noble Rare Jewels or Mr. Noble ever bought or proposed to buy merchandise from J.B. International in the traditional sense. In colloquial usage, William Noble Rare Jewels' acquisition of J.B. International's merchandise on consignment might be described as "buying" the merchandise. *Buy*, Oxford English Dictionary (2022 rev. ed.) ("To purchase, obtain by exchange, redeem, accept. To get possession or use of (anything offered or available for sale or hire) by giving an equivalent.").

Assuming J.B. International properly pled its breach of guarantee claim, J.B. International will have to elicit facts suggesting that the Parties adopted that usage before a jury. It has not established that such a broad reading of Mr. Noble's email is correct as a matter of law on the summary judgment record.

### 2. *Alleged Guarantee in the January 2020 Memorandum*

The second document purportedly memorializing Mr. Noble's guarantee, the January 2020 consignment memorandum, is clearer than Mr. Noble's email but likewise does not support summary judgment for J.B. International. Doc. No. 37-5. A

fragment in the memorandum states, "as agreed, paid immediately if sold," and adjacent text states, "[p]ersonally guaranteed by Bill Noble." *Id.* That language plausibly sets forth a guarantee by Mr. Noble of payments under the memorandum.

Assuming that is the correct reading of the memorandum, the Court still cannot enforce Mr. Noble's guarantee on the current record because the memorandum is unsigned. *Id.* The statute of frauds forbids enforcement of a promise to guarantee the debt of another unless the promise appears in a writing signed by the promisor or the promisor's representative. Tex. Bus. & Com. Code § 26.01; *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 2009 WL 1174641, at *9 (N.D. Tex. Apr. 29, 2009) (Boyle, J.).

Even if the Court considers the memorandum alongside Mr. Noble's earlier email guaranteeing "anything we buy," the combined writings do not satisfy the statute of frauds. Because the statute of frauds simply ensures that guarantees and certain other promises are in writing, a collection of writings setting forth the terms of a promise and the promisor's signed acknowledgment of the terms may meet the requirements of the statute of frauds although the individual writings do not. *Adams v. Abbott*, 151 Tex. 601, 604 (1952). Mr. Noble's email does not cure the defect in the memorandum under the statute of frauds because a jury could find that the two documents describe different guarantees. A jury could read the email to provide a guarantee of William Noble Rare Jewels' purchases from J.B. International and the memorandum to record a guarantee of William Noble Rare Jewels' payments on merchandise consigned from J.B. International. *Supra* Section III.C.1. Since Mr. Noble never signed an

13

acknowledgment of the latter guarantee, he would be accountable only for the former guarantee if the jury so found. *See Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 730–31 (Tex. 2020) (combination of emails did not satisfy statute of frauds where later emails did not reflect agreement to be bound by terms in earlier email); *Gruss v. Cummins*, 329 S.W.2d 496, 502 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.) (documents supplementing signed memorandum did not satisfy statute of frauds because memorandum did not "assent to [their] terms, at least impliedly").

## IV. CONCLUSION

The Court **GRANTS** summary judgment against William Noble Rare Jewels on J.B. International's claims for breach of the forbearance agreement and the January 2020 memorandum. The Parties agree that the principal amount due on these claims is $670,841.26, but have not briefed the interest or other charges due on the claims. Doc. No. 37 at 4; Doc. No. 41 at 6 n.2. They may supply briefing once the Court enters a final judgment. The Court **DENIES** summary judgment against William Noble.

**SO ORDERED**.

Signed November 1st, 2023.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE

14